# EXHIBIT 2

ELECTRONICALLY FILED
5/1/2017 10:53 PM
2017-L-004429
CALENDAR: C
PAGE 1 of 8
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
LAW DIVISION
CLERK DOROTHY BROWN

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT – LAW DIVISION**

| | | |
|---|---|---|
| TERESA DI JOSEPH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. |
| vs. | ) | |
| | ) | |
| UNITEDHEALTH GROUP and THE | ) | JURY DEMAND |
| STANDARD BENEFIT ADMINISTRATORS, | ) | |
| | ) | |
| Defendants. | ) | |

## VERIFIED COMPLAINT

NOW COMES Plaintiff, TERESA DI JOSEPH, by and through her attorneys, KISS & ASSOCIATES, LTD., and as and for her Verified Complaint, states as follows:

### Jurisdiction

1.  At all times herein Plaintiff resided in Lake County, Illinois.

2.  At all relevant times Plaintiff was working at the UnitedHealth Group offices at 1900 East Golf Road; Schaumburg, Illinois.

3.  Jurisdiction of this matter resides in Cook County, Illinois.

### Background

4.  Plaintiff began her working career for Allstate Insurance on September 27, 1982. She worked as a clerk and claims adjuster in the Claims Department until 1990.

5.  While Plaintiff was working for Allstate Insurance, she was told that she would have certain benefits that came with her employment; and as part of her compensation of working for Allstate Insurance, (1) would be the ability to purchase short term disability insurance, which she did,

and (2) that the company would provide long term disability in the event that she was injured and could not return to work after her short term disability policy had run its limits.

6.    In 1991 the Allstate Insurance Claims Department, in which Plaintiff worked, was sold to Metropolitan Life.    Plaintiff then became an employee of Metropolitan Life in its Claims Department.

7.    In 1995 Metropolitan Life spun off the Claims Department to another affiliate, Metlife. Plaintiff then became an employee of Metlife as a Claims Adjuster.

8.    In 1996 the claims unit that Plaintiff worked for was then sold to UnitedHealth Group.

9.    At UnitedHealth Group Plaintiff was promoted to a Case Analyst and ultimately was promoted to a Quality Auditor Supervisor.

10.    Therefore, even though Plaintiff worked for four different companies, in reality she had the same job and did the same work and had the continuous employment with the same group of people as their employer changed due to various mergers and acquisitions.

11.    From 1982 until 2014 when Plaintiff went out on long term disability, she had 32 years of continuous service.

12.    While at UnitedHealth Group, Plaintiff was given employee handbooks that attested to the fact that she was covered by a long term disability policy provided to her by UnitedHealth Group as part of her benefit package.

13.    Plaintiff was required to have surgery and used her short term disability for parts of 2012 and then again in 2013.

14.    In 2012 Plaintiff had 205 doctor appointments, which she tried to schedule after work and on the weekends so that they wouldn't interfere with work.

ELECTRONICALLY FILED
5/1/2017 10:53 PM
2017-L-004429
PAGE 2 of 8

15. From 2012 through April, 2015 Plaintiff saw 15 different medical treaters. Consistently, all of these medical treaters indicated that Plaintiff was disabled and unable to go to work.

16. Because of her worsening incurable condition, Plaintiff applied for and received long term disability.

17. On information and belief The Standard Benefit Administrators is the company retained by UnitedHealth Group to administer the employee benefit plans.

18. During the relevant period from 2012 through 2015 The Standard Benefit Administrators administered the long term disability plan for UnitedHealth Group.

19. As part of its administrative duties, it answered to UnitedHealth Group for the decisions that it made.

20. On information and belief it acted and carried out the instructions of UnitedHealth Group, including but not limited to terminating UnitedHealth Group employees' benefits.

21. On or about July 12, 2013 Plaintiff received a letter from The Standard Benefit Administrators on behalf of her employer, UnitedHealth Group, informing her that her long term disability had been approved. A copy of said letter is attached hereto as Exhibit "A".

22. On or about August 28, 2013 Plaintiff received a copy of a letter from The Standard Benefit Administrators to Wells Fargo/Renee, reaffirming that Plaintiff was approved for her long term disability. A copy of said letter is attached hereto as Exhibit "B".

23. On or about May 22, 2014 Plaintiff received a letter from UnitedHealth Group, indicating that she was going to be terminated as of June 2, 2014. A copy of said letter is attached hereto as Exhibit "C".

ELECTRONICALLY FILED
5/1/2017 10:53 PM
2017-L-004429
PAGE 3 of 8

## COUNT I – Bad Faith[1]
## UnitedHealth Group

As and for Count I of her Complaint, Plaintiff, TERESA DI JOSEPH, complains of Defendant, UNITEDHEALTH GROUP, as follows:

1-19. Plaintiff repeats and realleges the allegations contained in Paragraphs 4 through 23 of Background as and for Plaintiff's allegations for Paragraphs 1 through 19 of Count I of her Complaint as if fully set forth herein.

20. Arbitrarily and capriciously Defendant, UNITEDHEALTH GROUP, breached their duty by terminating Plaintiff's long term disability. See letter dated April 30, 2015 from The Standard to Plaintiff attached hereto as Exhibit "D".

21. This decision was despite the extensive medical reports from her treating physicians attesting to the fact that her disability made her unable to return to work.

22. The termination of her claim was as a result of fraud, negligence, bad faith or a combination of all three thereof.

23. The decision caused Plaintiff great harm in that it arbitrarily terminated her sole source of support and was not based on anything other than the arbitrary and capricious decision of anonymous "physician consultants."

WHEREFORE, Plaintiff, TERESA DI JOSEPH, respectfully requests that this Court enter judgment in her favor and against Defendant, UNITEDHEALTH GROUP, in excess of $500,000.00, plus attorneys' fees and costs and for any other relief this Court deems necessary and just.

ELECTRONICALLY FILED
5/1/2017 10:53 PM
2017-L-004429
PAGE 4 of 8

---

[1] In order to state a prima facie bad-faith claim, the plaintiff must allege the following three elements: 1. that a duty between the insurer and the insured arose (i.e., the underlying claim must be one provided for in the policy between the insurer and the insured); 2. that the insurer breached its duty through fraud, negligence, or bad faith (i.e., that an actual offer to settle within the policy limits was available for the insurer's acceptance and the offer was one that an ordinarily prudent insurer would accept considering the likelihood of the plaintiff's success at trial); and 3. that the breach was the legal cause of harm to the insured.

## COUNT II – Breach of Contract[2]
## UnitedHealth Group

As and for Count II of her Complaint, Plaintiff, TERESA DI JOSEPH, complains of Defendant, UNITEDHEALTH GROUP, as follows:

1-19.    Plaintiff repeats and realleges the allegations contained in Paragraphs 4 through 23 of Background as and for Plaintiff's allegations for Paragraphs 1 through 19 of Count II of her Complaint as if fully set forth herein.

24.    Plaintiff had a valid contract with Defendant, UNITEDHEALTH GROUP, through her employment.

25.    Specifically, she was given an employee handbook indicating that as long as she was an employee, she would be provided with long term disability benefits.

26.    Plaintiff performed all of her obligations under the contract in that she remained employed and took great care to obtain her medical treatments during hours when she was not working to minimize any impact it would have on her employer.

27.    Her employer breached the contract by arbitrarily and capriciously terminating her employment, as well as terminating her long term disability benefits.

28.    Plaintiff suffered great injury as a result of the actions by UnitedHealth Group in that Plaintiff's sole source of support was the long term disability promised by her employer and provided by her employer until the date of its arbitrary termination of benefits as well as employment.

WHEREFORE, Plaintiff, TERESA DI JOSEPH, respectfully requests that this Court enter judgment in her favor and against Defendant, UNITEDHEALTH GROUP, in excess of $500,000.00, plus attorneys' fees and costs and for any other relief this Court deems necessary and just.

---

[2] A breach of contract claim is an action at law, *Eyman v. McDonough District Hospital*, 245 Ill.App.3d 394, 613 N.E.2d 819, 821, 184 Ill.Dec. 502 (3d Dist. 1993). To state a cause of action for breach under Illinois common law, a party must demonstrate 1) existence of a valid contract; 2) performance of all obligations of the contract by the plaintiff; 3) breach of contract; and 4) resulting injury to the plaintiff.

ELECTRONICALLY FILED
5/1/2017 10:53 PM
2017-L-004429
PAGE 5 of 8

## COUNT III – Respondeat Superior[3]
## UnitedHealth Group

As and for Count III of her Complaint, Plaintiff, TERESA DI JOSEPH, complains of Defendant, UNITEDHEALTH GROUP, as follows:

1-19. Plaintiff repeats and realleges the allegations contained in Paragraphs 4 through 23 of Background as and for Plaintiff's allegations for Paragraphs 1 through 19 of Count III of her Complaint as if fully set forth herein.

29. On information and belief The Standard Benefit Administrators is the company retained by UnitedHealth Group to administer the employee benefit plans.

30. During the relevant period from 2012 through 2015 The Standard Benefit Administrators administered the long term disability plan for UnitedHealth Group.

31. As part of its administrative duties, it answered to UnitedHealth Group for the decisions that it made.

32. On information and belief it acted and carried out the instructions of UnitedHealth Group, including but not limited to terminating UnitedHealth Group employees' benefits.

WHEREFORE, Plaintiff, TERESA DI JOSEPH, respectfully requests that this Court enter judgment in her favor and against Defendant, UNITEDHEALTH GROUP, in excess of $500,000.00, plus attorneys' fees and costs and for any other relief this Court deems necessary and just.

ELECTRONICALLY FILED
5/1/2017 10:53 PM
2017-L-004429
PAGE 6 of 8

---

[3] The criteria for acting within the scope of employment under *respondeat superior* is: (1) Conduct of a servant is within the scope of employment if, but only if: (a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; (c) it is actuated, at least in part, by a purpose to serve the master[.] *** (2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master. 543 N.E.2d at 1308, citing RESTATEMENT (SECOND) OF AGENCY §228 (1958). See also *Adames v. Sheahan*, 233 Ill.2d 276, 909 N.E.2d 742, 330 Ill.Dec. 720 (2009).

## COUNT IV – Bad Faith
## The Standard Benefit Administrators

As and for Count IV of her Complaint, Plaintiff, TERESA DI JOSEPH, complains of Defendant, THE STANDARD BENEFIT ADMINISTRATORS, as follows:

1-19.    Plaintiff repeats and realleges the allegations contained in Paragraphs 4 through 23 of Background as and for Plaintiff's allegations for Paragraphs 1 through 19 of Count IV of her Complaint as if fully set forth herein.

33.    Arbitrarily    and    capriciously    Defendant,    THE    STANDARD    BENEFIT ADMINISTRATORS, breached its duty by terminating Plaintiff's long term disability.  See Exhibit "D".

34.    This decision was despite the extensive medical reports from her treating physicians attesting to the fact that her disability made her unable to return to work.

35.    The termination of her claim was as a result of fraud, negligence, bad faith or a combination of all three thereof.

36.    Defendant, THE STANDARD BENEFIT ADMINISTRATORS, owed a duty to Plaintiff to provide an honest and full report as to her medical condition instead of merely complying with the wishes of United Healthcare.

37.    UnitedHealth Group terminated Plaintiff on June 2, 2014 (see Exhibit "C").

38.    The Standard Benefit Administrators was merely following the orders of UnitedHealth Group to terminate Plaintiff's long term disability despite the overwhelming medical evidence indicating that Plaintiff was in fact disabled.

39.    The Standard Benefit Administrators did not even provide copies of the reports that its consulting physicians allegedly prepared indicating that Plaintiff was not disabled.

ELECTRONICALLY FILED
5/1/2017 10:53 PM
2017-L-004429
PAGE 7 of 8

40.    The decision caused Plaintiff great harm in that it arbitrarily terminated her sole source of support and was not based on anything other than the arbitrary and capricious decision of anonymous "physician consultants."

WHEREFORE, Plaintiff, TERESA DI JOSEPH, respectfully requests that this Court enter judgment in her favor and against Defendant, THE STANDARD BENEFIT ADMINISTRATORS, in excess of $500,000.00, plus attorneys' fees and costs and for any other relief this Court deems necessary and just.

Respectfully Submitted,

/s/ Philip M. Kiss
Philip M. Kiss

ELECTRONICALLY FILED
5/1/2017 10:53 PM
2017-L-004429
PAGE 8 of 8

Philip M. Kiss
KISS & ASSOCIATES. LTD.
Attorneys at Law
5250 Grand Avenue - #14-408
Gurnee, Illinois 60031
(815) 385-4410
Attorney No. 54709
philip_kiss@comcast.net

ELECTRONICALLY FILED
5/1/2017 10:53 PM
2017-L-004429
CALENDAR: C
PAGE 1 of 1
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
LAW DIVISION
CLERK DOROTHY BROWN

## VERIFICATION

Under penalties as provided by law pursuant to Section 5/1-109 of the Illinois Code of Civil Procedure (735 ILCS 5/1-109), I certify that the statements set forth in this instrument are true and correct except as to matters therein stated to be on information and belief and as to such matters I certify that I verily believe the same to be true.

Teresa Di Joseph

Philip M. Kiss
KISS & ASSOCIATES, LTD.
Attorneys at Law
5250 Grand Avenue - #14-408
Gurnee, Illinois 60031
(815) 385-4410
Attorney No. 54709
philip_kiss@comcast.net

ELECTRONICALLY FILED
5/1/2017 10:53 PM
2017-L-004429
CALENDAR: C
PAGE 1 of 4
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
LAW DIVISION
CLERK DOROTHY BROWN

*Manager*
*Marion Bartolino*
*4463*

*Renee*
*866-359-7363*



The Standard
Benefit Administrators

July 12, 2013

TERESA DI JOSEPH
Redacted
LAKEMOOR, IL        Redacted

Re:     UnitedHealth Group
        Group No.        643980
        Claim No.        00VR9066

Dear Ms. Di Joseph:

We are pleased to inform you that your Long Term Disability (LTD) claim with The Standard Benefit Administrators on behalf of Standard Insurance Company (The Standard), Claims Administrator of the UnitedHealth Group Group Policy has been approved. This letter explains your benefits and answers questions about your claim, which is administered under the terms of your Group Policy. For specific policy information, refer to your Certificate of Insurance or Summary Plan Description.

**When will you receive your benefits?**

We have determined that you became disabled on January 14, 2013. You must be disabled throughout your benefit waiting period of the later of 180 days or when STD ends before benefits become payable. Your benefit waiting period ended on July 12, 2013.

Your first payment of $2,760.11 is for the period from July 13, 2013, through August 12, 2013. Your monthly Explanation of Benefits Statement details your benefit calculation. Your first payment is due to you by August 13, 2013. If you remain eligible for ongoing benefits, you should receive payment by the 13th of each month.

**How is your disability benefit calculated?**

The formula used to calculate your LTD benefits is 60% of your monthly predisability earnings, as specified in your Group Policy. Our records show your predisability earnings were $4,600.18 per month. Therefore, your maximum benefit payable is $2,760.11 per month, before reduction for deductible income.

Your LTD benefits may be reduced by any deductible income that you or your dependents receive or are eligible to receive as a result of your disability or retirement (including, but not limited to, sick leave or salary continuation, Social Security, Workers' Compensation, State Disability benefits, work earnings, and/or retirement benefits).

PO Box 5031  White Plains NY 10602-5031  tel 800.426.4332
The Standard Benefit Administrators

*Exhibit "A"*

TERESA DI JOSEPH                              2                              July 12, 2013

ELECTRONICALLY FILED
5/1/2017 10:53 PM
2017-L-004429
PAGE 2 of 4

**How does income or benefits you receive from other sources affect your disability benefits?**

Our records show you did not receive any deductible income after July 12, 2013.

Please refer to the Explanation of Benefits Statement which you will receive monthly for details of each benefit calculation.

If you receive any income after July 12, 2013 which is not shown above, please contact our office immediately and forward a copy of any official statement you have received which shows the amount of this income and the period it covers. A minimum monthly LTD benefit of $276.01 will be payable monthly if your deductible income exceeds the maximum benefit payable.

If you are awarded income in the future, or you return to work or recover from your disability, please notify our office immediately to ensure your LTD benefits are issued accurately and to minimize possible overpayment of your claim.

You may experience a delay in receiving deductible income because other benefit plans, such as Social Security and retirement plans, have eligibility requirements that are different from The Standard. When awards are made, they may be paid retroactively for a period when you received LTD benefits without deduction for this other income. This may result in an overpayment of your claim. It is your responsibility to reimburse The Standard immediately for any overpayment of your LTD claim.

**May you return to work and continue to receive benefits?**

If you return to work, either part-time or full-time for any employer, notify us immediately. If you are working while disabled, you may be eligible for a return to work incentive benefit. Contact us and we will be happy to discuss this in further detail, including your return to work plans and how we may assist you.

**What are your options for benefit payments?**

- *Direct deposit:* If you would like the convenience of having your LTD benefit directly deposited into an account you designate, please complete and return the enclosed Electronic Funds Transfer (EFT) form.

- *The Standard SecureCard:* This option will credit your LTD benefit to a card that works like a debit card and can be used anywhere VISA is honored. If you are interested in The Standard SecureCard, please contact us for the necessary form.

- *Check via US Postal Service:* If you do not choose any other payment option, your LTD benefit check will be automatically sent by mail.

**Are your benefits taxable income with the Internal Revenue Service (IRS)?**

TERESA DI JOSEPH                                           3                                           July 11, 2013

ELECTRONICALLY FILED
5/1/2017 10:53 PM
2017-L-004429
PAGE 3 of 4

Our records indicate your employer paid 100% of the premium. The portion of your LTD benefits subject to Federal Income Tax is the percentage of premium paid by your employer. Thus, 100% of your LTD benefits are taxable.

To ease your financial obligation at tax time, you may elect to have a portion of your LTD benefit withheld for **Federal Income Tax**. The minimum that can be withheld is **$90.00 per month**. A form is enclosed for your use if you would like to request this withholding. Since tax laws are complicated, we request that you consult the IRS or your own tax consultant regarding any tax questions you may have. In addition, you may want to request a copy of Publication 524 "Credit for the Elderly and Totally and Permanently Disabled," from the IRS.

### Are your benefits subject to Social Security and Medicare (FICA) taxes?

If you paid into the Social Security and/or Medicare systems, your LTD benefits may be subject to Social Security and/or Medicare taxes. As explained above, the taxes apply to 100% of your LTD benefits. The taxes will only apply to benefits paid during the first six complete calendar months after you cease work and to benefits paid if you return to work for your same employer.

### Do other taxes need to be withheld?

If you elect to have Federal Income Tax withheld, Illinois also requires that you have State Income Tax withheld from your LTD benefits. Thus, if you elect voluntary Federal Income Tax withholding, we will automatically also deduct State Income Taxes from your LTD benefits. Even if you do not elect Federal Income Tax withholding, you may request voluntary State Income Tax withholding by contacting us for the necessary form.

### How will you know what to report on your tax returns?

We are required by law to report to the IRS the amount of benefits we pay you. These are classified as sick pay benefits by the IRS. Thus, by the end of January, you will be sent a W-2 form from us showing the total amount of taxable benefits you received during the preceding calendar year.

### Will you have to provide any additional information?

We will review your claim periodically to confirm your continued disability and eligibility for benefits. We may need additional information, such as updated medical statements. It is your responsibility to provide this information. After a period of time the definition of disability may change, which would require a review of your claim.



We are reviewing your claim to determine what is causing or contributing to your Disability.

The UnitedHealth Group Group Policy limits payment of benefits to 24 months during your entire lifetime for Disabilities caused or contributed to by Mental Disorders.

Based on the information in your claim file, it appears that your Disability may be caused or contributed to by mental disorders. Therefore, we are conducting an investigation to determine if this Limitation applies to your claim. Once the investigation is completed, we will let you know what we found.

If we determine that the Limitation applies to your claim for benefits, your claim will close July 12, 2015. You will receive benefits through that date, as long as you remain Disabled as defined in the UnitedHealth Group Group Policy.

To be eligible for benefits after July 12, 2015, you must remain Disabled by a Physical Disease, Injury, or Pregnancy that is not limited under the Limitation. You must also meet all other provisions of the Group Policy.

If you have any information that would indicate or support that the Limitation should not be applied and/or that you are Disabled by a condition that is not limited by this provision, please send this information to us as soon as possible. We want to make sure all information is carefully considered and evaluated before we make our decision.

PO Box 6031 White Plains NY 10602-5031 tel 800.426.4332
The Standard Benefit Administrators

ELECTRONICALLY FILED
5/1/2017 10:53 PM
2017-L-004429
CALENDAR: C
PAGE 1 of 1
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
LAW DIVISION
CLERK DOROTHY BROWN

The Standard Benefit Administrators

August 28, 2013

Wells Fargo/ Renee

*Sent Via Facsimile to #815-385-4420*

Re:   Group Policy:
      Claimant: Teresa Di Joseph
      Group Policy No. 643980
      Claim No. 00VR9066

Dear Renee / Wells Fargo:

This letter pertains to Ms. Di Joseph's long term disability (LTD) claim with The Standard Benefit Administrators, administrators of the UnitedHealth Group LTD Policy.

Ms. Di Joseph's LTD benefits began on July 13, 2013. She is eligible to receive a gross monthly LTD benefit of $2,760.11. She is eligible to receive a monthly benefit until the later of age 65 or her normal Social Security Retirement Age provided she continues to meet the applicable definition of disability under the above listed policy.

If you have any questions, or would like to discuss her claim further, please contact me directly.

Sincerely,

Kristina Wisniewski
Disability Benefits Analyst
Employee Benefits
Tel. 800-426-4332 Ext. 4502
Fax. 800-378-8361

PO Box 5031
White Plains NY 10502-5031
tel 800.426.4332

Exhibit "B"

ELECTRONICALLY FILED
5/1/2017 10:53 PM
2017-L-004429
CALENDAR: C
PAGE 1 of 1
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
LAW DIVISION
CLERK DOROTHY BROWN

*[handwritten annotations: "Shawn Clayton sent to UHC — 2 week"; "11:33"; "Packet"; "After"; "Comes in 6-30-14"; "Federal law payment will back date"; "they will"; "system eebel"; "med #391 80"; "Vision Dental Life - Conversion to IND supp ..."]*

**UNITEDHEALTH GROUP**

HR direct — Employee Relations
5995 Opus Parkway
Minnetonka, MN 55343
1-800-561-0861  fax 1-855-708-6582

May 22, 2014

Teresa Di Joseph
Redacted
Lakemoor, IL  Redacted

RE: Case 643298

Dear Teresa:

On January 14, 2013 you began a leave of absence. Your leave under the Family and Medical Leave Act (FMLA) was exhausted on February 19, 2013. To date you have received more than 5 extensions of your Leave of Absence.

You have now been on leave for over 16 months, and as of the date of this letter, you have not been released to return to work (with or without accommodations). Further, the medical documentation submitted by your health care provider does not list any anticipated date on which you will be able to return to work with or without accommodation(s). Therefore, UnitedHealth Group has determined that your employment will be administratively terminated effective June 2, 2014.

If you are receiving Long Term Disability or Workers' Compensation benefits, you will continue to receive separate communications about these benefits from the administrator of your claim.

You will also receive separate notification about continuing your benefits under COBRA.

You are eligible to apply for any open positions at the company and are encouraged to regularly review the open positions on the UnitedHealth Group career site (www.unitedhealthgroup.com) and apply for any positions for which you are qualified.

If you have any questions about this letter, please contact HRdirect at 1-800-561-0861 and refer to case# 643298.

Sincerely,

*Allison Lubben*

Allison Lubben
HRdirect - Employee Relations

cc: Michelle Fernandez

*Exhibit "C"*

ELECTRONICALLY FILED
5/1/2017 10:53 PM
2017-L-004429
CALENDAR: C
PAGE 1 of 4
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
LAW DIVISION
CLERK DOROTHY BROWN

TheStandard

April 30, 2015

Teresa Di Joseph
Redacted

Lakemoor IL    Redacted

Re:    UnitedHealth Group
       Group Policy 643980
       Claim No. 00VR9660

Dear Ms. Di Joseph:

We are writing in regard to your Long Term Disability (LTD) claim with Standard Insurance Company (The Standard).

The Administrative Review Unit has completed the administrative review of The Standard's decision to close your LTD claim. This was an independent review, conducted separately from the individuals who made the original decision.

During the review of your claim, we read the information contained in your claim file. We considered the vocational information and took into consideration the conclusions of the additional Physician Consultants who had not previously reviewed your medical records. We applied the Group Policy provisions to your set of claim facts.

When the information is considered collectively, it supports that your condition was not severe enough to preclude you from working in your Own Occupation beyond December 31, 2014. We find the decision to close your LTD claim was correct.

This letter will explain our findings.

The Group Policy defines Own Occupation as follows:

A.    *Own Occupation Definition of Disability*

      *During the Benefit Waiting Period and Own Occupation Period you are required to be Disabled only from your Own Occupation.*

      *You are Disabled from your Own Occupation if, as a result of Physical Disease, Injury, Pregnancy or Mental Disorder:*

Standard Insurance Company
900 SW Fifth Avenue
Portland OR 97204-1282
Page 1 of 4

Exhibit "D"

Teresa Di Joseph

ELECTRONICALLY FILED
5/1/2017 10:53 PM
2017-L-004429
PAGE 2 of 4

1. *You are unable to perform with reasonable continuity the Material Duties of your Own Occupation.*

2. *You suffer a loss of at least 20% in your Indexed Predisability Earnings when working in your Own Occupation.*

*Note: You are not Disabled merely because your right to perform your Own Occupation is restricted, including a restriction or loss of license.*

*During the Own Occupation Period you may work in another occupation while you meet the own Occupation Definition of Disability. However, you will no longer be Disabled when your Work Earnings from another occupation meet or exceed 80% of your Indexed Predisability Earnings. Your Work Earnings may be Deductible Income. See Return to Work Provisions and Deductible Income.*

*Own Occupation means any employment, business, trade, profession, calling or vocation that involves Material Duties of the same general character as the occupation you are regularly performing for your Employer when Disability begins. In determining your Own Occupation, we are not limited to looking at the way you perform your job for your Employer, but we may also look at the way the occupation is generally performed in the national economy. If your Own Occupation involves the rendering of professional services and you are required to have a professional or occupational license in order to work, your Own Occupation is as broad as the scope of your license.*

*Material Duties means the essential tasks, functions and operations, and the skills, abilities, knowledge, training and experience, generally required by employers from those engaged in a particular occupation that cannot be reasonably modified or omitted. In no event will we consider working an average of more than 40 hours per week to be a Material Duty.*

## Background

In your correspondence you noted that you originally ceased work due fibromyalgia, chronic regional pain syndrome and a history of reflex sympathetic dystrophy (RSD) syndrome.

During the review of your claim and as part of the ongoing management of it, medical records in your claim file were reviewed by a Medical Director who is board-certified in Internal Medicine. These included records from multiple providers.

2

Teresa Di Joseph

The full details of the medical records, and the details and conclusions of the reviewing Medical Director can be found in Ms. Gougler's December 31, 2014 letter.

## Request For Review

On March 17, 2015, we received a request for review. You noted you wanted to appeal the decision that you are not Disabled. You provided letters from several providers as well as a brief medical history written in your own words outlining your symptoms, areas of pain and treatment.

We received letters from Dr. Flood, Dr. Dallas-Prunskis, Dr. Schoenbrod and Dr. Ahmad. No additional information was received with your request.

## Medical Review

In order to assist in our review, your medical records were reviewed by The Standard's Medical Directory who is board-certified in rheumatology and internal medicine, as well as a Physician consultant board certified in psychiatry. The reviewing consultants had not previously been involved in the prior review of the medical information in the claim file.

With regard to any psychiatric conditions, there is no current information for review. Your records support psychiatric care from Janice H. Spangler, Psy.D, and Dr. Schoenbrod. However, these notes come to an end on August 20, 2013. The letter submitted with your request for review from Dr. Schoenbrod is dated February 12, 2013, and did not contain any current psychiatric information. As a reminder, we are evaluating your functional capacity as of December 31, 2014, the date your claim closed.

The February 12, 2013, letter states you were first seen by Dr. Schoenbrod on July 12, 2011, and diagnosed with generalized anxiety disorder, panic attacks without agoraphobia, and rule out attention deficit disorder with hyperactivity. She states that none of your disorders interfered with your ability to work and you responded to medications. Further, she states that over the last year you had been suffering from chronic pain (during 2012), primarily RSD, compounded by other physical problems. You are described as motivated and compliant in all aspects of your medical care, but now have a mood disorder due to chronic pain. She states your ability to function cognitively is impaired due to focus issues secondary to pain. She concludes by noting that you struggle to remain optimistic about any resolution to your physical problems, and she believes you are entitled to disability, primarily due to physical impairment.

Dr. Dallas-Prunskis' records date back several years. These include visits for Botox injections in August 2012 and January 15, 2014, lumbar sympathetic blocks in September 2012, September 2013, November 2013 and a trigger point injection in December 2013.

3

ELECTRONICALLY FILED
5/1/2017 10:53 PM
2017-L-004429
PAGE 3 of 4

Teresa Di Joseph

There is an EMG from December 10, 2013 consistent with chronic regional pain syndrome and lumbar radiculopathy.

You are seen in the Mayo Clinic on February 10th and 12th 2014. There is a multi-system evaluation completed by Dr. Hayes, physiatrist, which indicates that you were quite anxious and that anxiety and stress were increased due to pain. You were managing pain with Percocet one to two times daily. You were taking Xanax, baclofen and Ambien at bedtime. You describe going to bed late and not getting up until about 11:00am and that sitting at your desk at work increased your pain until you required disability. You noted you had no plans to return to work full time. It is further described that your functional capacity was fairly normal, but that all activities are done in pain. Your laboratory studies were normal and imaging of your spine was said to show facet arthropathy in the lower cervical and lower lumbar spine. The x-ray of your shoulder and EMG of the right upper extremity were both also normal. You are able to manage your own housework, food preparation, shopping and daily commute. You were able to go out with friends two times a week, in addition to seeing to your parents, who are both elderly and not well. You also work as a volunteer several hours per week at a food pantry. Your diagnoses included chronic pain syndrome, chronic low back pain, myofascial pain right shoulder, anxiety and deconditioning. They did not find evidence of chronic regional pain syndrome and discussed with you chronic pain management.

There is a note dated April 30, 2014 which indicated you continued to demonstrate significant cognitive impairment in reaction to chronic pain/RSD. Your ability to focus and sustain attention was documented as very poor. You are documented as taking notes to help you remember the session.

On September 2, 2014, you are said to have chronic regional pain syndrome and paresthesias in the feet. You were taking gabapentin and the assessment is a history of chronic regional pain syndrome, myalgia and low back pain.

You are seen by Dr. Dallas-Prunskis on September 24, 2014. There is documentation that you were stopping Effexor and Adderall and were now taking Lyrica. You indicate that you were feeling a little bit better, but that it may be because you are now accustomed to pain.

By October 21, 2014 your pain was down to five or six from seven to eight. You had positive tender points. The assessment was fibromyalgia, neck pain, history of RSD and disturbed sleep. You were given Lyrica, vitamin D, Ambien, and oxycodone as well as referred to pain management and neurology.

ELECTRONICALLY FILED
5/1/2017 10:53 PM
2017-L-004429
PAGE 4 of 4

ELECTRONICALLY FILED
5/1/2017 10:53 PM
2017-L-004429
CALENDAR: C
PAGE 1 of 4
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
LAW DIVISION
CLERK DOROTHY BROWN

Teresa Di Joseph

The November 9, 2014 note documents you were told to temporarily stop Lyrica due to some possible side effects.

We have an undated letter from Dr. Flood, podiatrist. He believes you have complex regional pain syndrome and severe posttraumatic arthritis. He has managed your care for an extended period of time, and in his medical opinion, you are limited in your activities of daily living and are unable to work on a sustained basis. Specifically he states that you have severe restriction in functional capacity due to your physical conditions, which affect your ability to even perform essential daily functions. The onset of the complex regional pain syndrome was rapid and severe after elective foot surgery to address osteoarthritis, your posttraumatic arthritis was gradual in nature, but contributes to your Disability. Dr. Flood's opinion is that you are limited in your ability to stand, walk, climb, negotiate uneven terrain and lift heavy objects. He also offers that you are affected by fatigue and depression, which are caused by your physical impairments. He concludes his letter by stating you are unable to resume any type of gainful employment due to these physical impairments.

Dr. Ahmad provided a return to work/school status note dated January 8, 2015. This documents you were seen for follow up regarding your work status. He documents chronic pain, RSD and fibromyalgia. Dr. Ahmad appears under the impression that Dr. Schoenbrod recommended an inability to work (please note, we have no recent records to confirm treatment or recommendations after August 2013), and he agrees with this opinion.

There is a January 20, 2015 letter from Barrington Pain and Spine Institute, signed by Terri Dallas-Prunskis, M. D. This letter notes you have cervicalgia with headache pain, right shoulder pain, secondary to myofascial pain syndrome and ligamentious tear, right lower extremity pain secondary to complex regional pain syndrome, and low back pain with a component of myofascial pain following the initial lumbar sympathetic block. Dr. Dallas-Prunskis states your last injection was on January 20, 2015, without much effect. Further, because of your multiple pain complaints, fibromyalgia and the fact that there has been no consistent long-term pain relief despite multiple interventions, she does not feel that you are able to return to your current job.

The reviewing psychiatric Physician Consultant states that from a psychiatric point of view, we have no current information. While we do have a letter from Dr. Schoenbrod from February 2013, we do not have any actual chart notes. In fact, the last note we have is from Dr. Spangler is from August 2013. It is unknown if you continue to receive psychiatric treatment, or what your current medications may be. There is no evidence of cognitive issues, and there has been no neuropsychological testing done.

Given the information contained in your claim file the Physician Consultant notes there is no psychiatric diagnoses supported by the medical records. There is no information regarding how

5

Teresa Di Joseph

ELECTRONICALLY FILED
5/1/2017 10:53 PM
2017-L-004429
PAGE 2 of 4

the diagnoses described by Dr. Schoenbrod were reached, specifically with regard to attention deficit disorder with hyperactivity. There is no evidence of any ongoing psychiatric treatment, and therefore, no limitations or restrictions can be identified for any mental health conditions.

Though our Physician Consultant does not find evidence to support mental health diagnoses, the opinion regarding lack of impairment secondary to psychiatric conditions is consistent with the statement provided by Dr. Schoenbrod. Dr. Schoenbrod has reported to The Standard that your mental health conditions do not impair your ability to work. However, she feels that your pain symptoms result in cognitive impairment. We would note that your medical records are absent of neuropsychological testing in order to support a level of impairment of such severity as to preclude normal functioning. In addition, you continue to drive, attend appointments on your own and handle your finances. The medical records available for consideration do not document observations of abnormal cognitive or mental health behavior during your medical appointments. Therefore, though we understand Dr. Schoenbrod is advocating on your behalf, we do not find support for her statements regarding cognitive impairment.

It is also important to understand that merely having a diagnosis, living with a medical condition, and or receiving medical treatment does not necessarily constitute Disability. In order to be eligible for LTD benefits you must provide satisfactory written proof to support you experience symptoms of such severity you are precluded from performing regular work duties with reasonable continuity.

The reviewing Medical Director notes your long history of chronic pain, stating various diagnoses have been offered, including chronic regional pain syndrome, cervicalgia, back pain, fibromyalgia and others. You had an extensive evaluation through the Mayo Clinic in February 2014, and at that time, there was no evidence to support diagnoses of chronic regional pain syndrome, or severe arthritis. Your supported diagnosis was fibromyalgia/chronic pain. Further, it was noted that although you had pain, you were able to do housework and remain fairly active.

After a review of your medical records the Medical Director opined that your primary impairing physical diagnosis is fibromyalgia. While we appreciate that you have some degree of ongoing pain, we do not find the medical records support that you would be precluded from performing regular work activity with reasonable continuity.

We feel it is reasonable to accept that your limitations and restrictions include an inability to lift, carry, push or pull greater than 10 lbs, no continuous standing and walking without the ability to rest, no frequent bending, squatting, crouching, crawling, kneeling, stooping or twisting. These limitations and or restrictions are consistent with full-time sedentary work activity. In addition, the physical demands of your Own Occupation would not exceed these limitations or restrictions.

Teresa Di Joseph

ELECTRONICALLY FILED
5/1/2017 10:53 PM
2017-L-004429
PAGE 3 of 4

## Vocational Information

Your Own Occupation of Insurance Checker is considered a sedentary strength level occupation. The *U.S. Department of Labor Dictionary of Occupational Titles*, Fourth Edition, defines sedentary work as follows:

*Sedentary Work – Exerting up to 10 pounds of force occasionally. (Occasionally: activity or condition exist up to 1/3 of the time) and/or a negligible amount force frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time) to lift, carry, push, pull, or otherwise move objects, including the human body. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.*

As noted above, the medical information in your claim file supports you possess the ability to perform sedentary work activity. In addition, there is insufficient evidence to document cognitive and or psychiatric limitations or restrictions. Therefore, you are capable of performing the Material Duties of your Own Occupation.

## Conclusion

In summary, The Standard has made a good effort to evaluate your claim for LTD benefits. Based on a medical and vocational review of your file, and taking into account the opinions of two additional Physician Consultants. The Standard does not find sufficient evidence to support you have a physical or mental condition severe enough to prevent you from performing your Own Occupation. Therefore, you do not satisfy the Own Occupation Definition of Disability and the decision to close your claim as of December 31, 2014 is correct.

The Group Policy does not provide voluntary dispute resolutions options. However, you may contact your local U.S. Department of Labor office and/or State Insurance regulatory agency for assistance.

We want to let you know that upon further investigation, other valid reasons for limiting or denying your claim, which have not been previously considered, could come to our attention. Therefore, The Standard reserves the right to consider and assert other reasons for limitations or denial of your claim should they occur in the future.

If you request a review and the decision to close your claim is upheld, you will have the right to file suit under Section 502(a) of the Employment Retirement Income Security Act (ERISA) or state law, whichever is applicable.

7

Teresa Di Joseph

You are entitled to copies of all documents, records, and non-privileged information that The Standard relied on to administer your group LTD claim. If you would like a copy of your claim file, The Standard will provide you with a copy without charge after you send a signed, written request. Please address your request to Tania Gougler, Senior Disability Benefits Analyst. Your claim file is being returned to her.

You have now exhausted the administrative review procedure provided by the Group Policy. We hope this letter has adequately explained why your LTD claim was closed.

Sincerely,

Jessica Chastain, FLHC
Benefits Review Specialist
Administrative Review Unit
1-800-368-1135 Ext. 7648

8